that some of us have access to the records sitting up here through modern technology. So please be accurate in those record sites, which you should be anyway. All right. With that, we will call Adekeye, I'm not sure how to pronounce that, please. May it please the Court. Good morning, Your Honors. My name is Candace Rucker and I represent the appellant, Mr. Adedji Adekeye. Mr. Adekeye was sentenced to 35 years in prison because his trial counsel rendered constitutionally ineffective representation. This court granted a certificate of appealability on Mr. Adekeye's claim that his trial counsel rendered ineffective assistance by failing to conduct a thorough investigation of the facts and the law. Three critical points demonstrate how trial counsel's ineffective representation prejudiced Mr. Adekeye's defense. First, trial counsel disclosed to the jury that Mr. Adekeye had previously been convicted of aggravated robbery. Second, trial counsel retained an investigator to discharge his constitutional obligation to conduct this investigation, but failed to interview a single eyewitness to the alleged crime. The totality of these circumstances combined to rob Mr. Adekeye of a fair trial. Mr. Adekeye received no greater... There never was a report, right? I mean, we don't, it's not, there's not one in the record. Yes, Your Honor. We have evidence in the record that the report exists, but that Mr. Adekeye's trial counsel never... But what I'm saying is it's not in the actual reports, nobody's ever gotten it. That's right. Yes, Your Honor. Strickland demands the effective assistance of counsel for all criminally accused. To prove ineffective assistance, Mr. Adekeye must demonstrate that his trial counsel was deficient, that his performance was constitutionally deficient, and that this deficiency prejudiced his defense. To show that his trial counsel's performance was deficient, Mr. Adekeye must demonstrate that his trial counsel's representation fell below objective standards of reasonableness as measured by prevailing professional norms. Trial counsel failed to investigate the law prior to trial. This amounts to prejudicial incompetence. According to Strickland, trial counsel's investigation doesn't need to be exhaustive, but it must include an independent examination of, quote, the facts, circumstances, pleadings, and laws involved. Adopting Strickland, this court also requires an investigation into both the law and the facts. Under Texas law, where a defendant is willing to stipulate to prior convictions, as Mr. Adekeye was here, admitting evidence of his prior convictions during the guilt-innocence phase is irrelevant because the stipulation removes from contention the existence of the prior conviction. That kind of evidence is, quote, prejudicial and possesses no probative value. That's Hernandez v. State at 109 Southwest 3D 491. Ms. Rooker, just skipping to prejudice for a second, do you agree that on a deficient investigation claim, you've got to specify what evidence that a competent, thorough investigation would have unearthed, what would it have found? Do you agree with that? Yes, Your Honor, and that's true. And how it would change the trial's outcome. Do you agree with that? Yes. So what overlooked evidence did you present or specify to the district court? Your Honor, we have not specified factual evidence that would have changed the outcome of the trial, but that does not change the fact that Mr. Adekeye's trial counsel made this incompetent and prejudicial admission to the jury. And so we asked the panel to find that the prejudice that is necessary under Strickland here came in by way of his introducing evidence of Mr. Adekeye's prior conviction. That's a prejudice that has been, according to Texas law, judicially determined. And no amount of the only thing that can cure that prejudice is a new trial. Well, what about you have an allegation that eyewitnesses weren't interviewed. Do you have any information now? I mean, it's been a good while as to whether, for instance, the other occupant of the beauty parlor saw anything or didn't see anything or could confirm or deny what the allegation was. Do you have anything showing prejudice that wasn't submitted? No, Your Honor. And that's why we asked this court to remand this case to the district court for — You haven't even tried to interview anyone. No, Your Honor. We have not. We have not interviewed anyone. And to be fair to you, you were selected at the appellate stage. That's right. He did not have counsel at the district court stage. That's right. He was pro se. So when we're saying you, we mean you collectively, your client. I also mean appellate counsel, because she's presenting an argument of prejudice here. We need factual allegations to establish the prejudice, if there is any. Right. The appellate counsel at the appellate stage in the state court did not interview you. Right. But you personally only got here at the appeal on the Fifth Circuit. Correct. Okay. That's right. But the appellate counsel in the state court is who didn't, or that whole team is who didn't do the investigation. Right. And the court's grant of the COA is limited to trial counsel's investigation. But this court has never handled a situation on facts directly analogous with these. This is a situation where trial counsel failed to do anything. So this court has handled cases where trial counsel failed to call to investigate the scene of the crime. But this is the case where trial counsel has failed to do anything. So while this court has handled pieces of these facts, this is a case where trial counsel's failure to investigate both the facts and the law amounted to such a gross constitutional violation that this case should be remanded to the district court for an evidentiary hearing on the issue of prejudice. Okay. One of the problems, as I see it, is that Rompilla, which is probably your best case for the failure to investigate being itself enough, we did know, or they did know, from the record what the investigation would have revealed because it was there on the face of documents that the attorney ignored. Things about his mental health, things about his background were all there. So it certainly could be developed further. That's not the question. But we are somewhat guessing what the other person in the salon might have said or what the slim person that was never found of the trio that were seeking to escape might have said, et cetera. So that's something, I guess, point me to the U.S. Supreme Court case or the Fifth Circuit case where we've said we can do that, that we can guess at what these people might have said. Your Honor, we're not asking the court to guess or to speculate about what they said. We are relying on Bryant v. Scott, which is 28 F. 3rd, 1411, where this court handled a case where eyewitnesses to the crime had not been interviewed or investigated, and the court remanded the case for an evidentiary hearing on that issue of prejudice. And this is, of course, in addition to the That's pre-EDPA, though. Yes. That's a problem, isn't it? Yes, Your Honor. We recognize that that is an issue, but there is circuit court precedent suggesting that you can remand for an evidentiary hearing on this issue. Okay, tell me that. The post-EDPA 2254 state court conviction, what case have we said, we have no idea what this investigation would show, but we're going to remand for an investigation? Your Honor, this court, to my knowledge, has not dealt with an issue like this since then, where the totality of the circumstances, the totality of trial counsel's failure to investigate has been so far-reaching. And the state cites to the Penholster case for the proposition that this court cannot remand for an evidentiary hearing, but that case is distinguishable because there the court was dealing with an incomplete investigation. But in this case, the court is dealing with no investigation whatsoever. This court has already stated, previously stated, that the failure to conduct an independent investigation is per se constitutionally deficient. So what happened here and I have no trouble agreeing that this person was deficient, this lawyer, Mr. Lewall. My concern is you still got the prejudice prong, and I'm struggling to find the hook you seem to think you have that gets you there. Right, Your Honor. The investigation that he was constitutionally responsible for conducting is an investigation into both the facts and the law. Okay, let's talk about that facts and the law. So I'm looking at this order granting the certificate of appealability. And we said, Attke argues that the evidence was insufficient, trial counsel was ineffective for failing to investigate his case adequately, prevent jurors from learning prior Robertson conviction, and request a limiting instruction. We then granted it on just the investigate his case adequately. So even though you see that as including law and facts, we had it as ABC, and we granted only on A. We did not grant on the preventing jurors from learning a prior robbery conviction, which is the argument you're making. And I appreciate you're a lawyer, you're doing your best to slide it in, you're trying to slide it in as an investigation of the law, but I don't think we granted a COA on that. How did we do that? Yes, Your Honor. I think it's important to note that Judge Dennis did not limit the grant of the COA to just an investigation of the facts. He mentioned only the adequate investigation into the case. And also, when you look at Judge Rosenthal's decision in the district court, the issues that were raised were failure to move the court to prevent jurors from hearing this, and also failure to request that limiting instruction. And so the issue that was raised in the district court is failure of trial counsel to do something that he should have done, which is what we're asking the court to recognize that trial counsel affirmatively did something, affirmatively prejudiced his client by introducing this evidence in his opening statement. So it's not that he didn't move the court to prevent the jurors from hearing this. He told the jury. He told the jury without instruction and contrary to the stipulation that he had previously been convicted of aggravated robbery, which is prejudicial under Texas law. In addition, Your Honors, to failing to investigate the law, as I previously noted, he failed to investigate the facts of this case. And so instead of conducting an independent investigation into potential inconsistencies or avenues of impeachment, trial counsel simply investigated the evidence that the state provided him. That's all he did. And the court, as I noted, has previously established that that's constitutionally ineffective. Before moving on to prejudice and really hammering that, I'd like to remind the witnesses to the alleged crime. He never visited the scene of the crime, never took photos of the tinted windows at the salon and in the vehicle, never requested the offense report, never obtained a copy of the 911 recording, and never obtained a copy of the investigator's report, all of which combined to increase the probability, to Judge Willett's question, that this defendant would be convicted. To prove prejudice, Your Honors, the Supreme Court has required a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. But it's important to note that that reasonable probability is not a probability beyond certainty. It's not absolute certainty that the result of the proceeding would have been different. It's simply a probability. A probability kind of a more likely-than-not standard? Yes, Your Honor. It's a probability. I mean, here we just don't know. It could be the people in the salon said, I didn't see anything and the slim person is never found. So then what? Your Honor, the Supreme Court only requires a probability sufficient to undermine the confidence in the outcome of these proceedings. And that's what we have here when you combine the egregious failure to conduct any investigation whatsoever and to come into court without knowing the controlling law with the weakness of the state's case. But see, it's not that weak. I mean, we do have the witness from the salon is very clear. And then we have this chase and this departure and this dropping things along the way and finding your client in the field or wherever it was. I mean, that seems like pretty good evidence. And so I'm struggling to see what it is. This isn't something where your client is saying they have an and so on, where you can say, wow, I mean, if that had been developed, that could really change things. You're just saying you never know what you'll find in an investigation. And I agree with you. And I think this lawyer should have done the investigation. But how is that enough to be more likely than not? Well, Your Honor, I think the panel should look to Justice Brown's dissent in the state court decision to further bolster the notion that the state's case is weak. The evidence that was presented at trial is at variance with the indictment. The indictment says that Mr. Adeke attempted to enter this business. But we have no evidence beyond the fact that he attempted to exit a vehicle. The indictment says he had the specific intent to rob this eyewitness, whose testimony is the cornerstone of the state's case. And it's, I might add, a very suggestive identification. But there's no evidence that he had the specific intent to rob this person. He could have intended to rob anyone else or not rob anyone at all. And then the indictment says that he was wearing a mask, but Ms. Mendez later testified that it was a stocking cap. And so there are certain inconsistencies between the evidence that was presented at trial and what is alleged in the indictment to underscore just how weak the state's case is. And Strickland makes clear that when a verdict or conclusion is only weakly supported by the evidence, then trial counsel is constitutionally obligated to do more. So the investigation or the lack of investigation is made more palpable by the fact that the state's case is weak. As I noted earlier, trial counsel's errors in this case combined to deprive Mr. Adeke of a fair trial. So this is not a case about uncalled witnesses where, you know, Mr. Adeke should be required to put in evidence of what the witnesses would have said because, for one, he's incarcerated and has retained this attorney to investigate this case for him, and the counsel has completely dropped the ball, has completely abdicated his constitutional responsibility to access this evidence or to investigate this evidence. But trial counsel's, as I noted, failure to locate and interview eyewitnesses to the alleged crime is only compounded by his failure to inspect the physical evidence or to request the written statements or the 911 calls or to visit the scene of the crime. The state's case, which I've already noted is weak, unravels if any of these errors are patched. So jurors likely would have been more circumspect if trial counsel had not disclosed that Mr. Adeke had a previous conviction for armed robbery. The investigator's report would have uncovered evidence or witnesses, and a skilled trial lawyer could have used that evidence in mitigation of the state's affirmative case. And any number of witnesses from the other stores could have created a reasonable doubt and could have undermined Ms. Mendez's eyewitness testimony by calling into question her identification of Mr. Adeke. The absence of specific evidence of proof in this case is not a fatal deficit. No Fifth Circuit case, as I've noted, has addressed this given set of facts. Cases only address pieces of these facts. This Court should not allow precedent under which a trial attorney can do nothing and have his client remain in jail for the rest of his life. We ask this Court, therefore, to reverse the judgment of the district court and remand with instructions to enter the writ. Alternatively, we ask this Court to remand the case to the district court for an evidentiary hearing on prejudice. Thank you. Thank you. And you have reserved time for rebuttal. Ms. Yonah. Mr. White. May it please the Court, the State courts here did not apply Strickland in an objectively unreasonable manner. This habeas case is easily resolved on Strickland's prejudice prong. Adeke's claim that a more thorough investigation would have led to a different result rests on unfounded speculation of what that investigation might have uncovered, and it does so in a case with overwhelming evidence of his guilt. Can you address the issue of whether the certificate of appealability encompasses the failure to investigate the law of when you can admit a criminal, prior criminal conviction? Our position is that the order from Judge Dennis just deals with a fact investigation. If you look at the application for a COA, I mean, this came up just a few minutes ago, but there is a sufficiency of the evidence argument raised and then three different ineffectiveness of counsel claims. And one was labeled a failure to investigate that dealt only with a fact investigation. Another one, I believe, was labeled something like failed to have a firm command of the governing law. That is that encompasses trial counsel's failure to prevent jurors from learning about the prior robbery conviction that has come up now. And then a third one talking about failure to request a limiting instruction about prior criminal history. What it looks like happened is in the order granting the COA just on one particular part of that IATC argument, Judge Dennis used slightly different labels for the labels that were used in the COA application. But the grant here on a failure to investigate maps onto the arguments made labeled a failure to conduct a sufficient fact investigation in the COA application. And the argument, the argument about a failure to brush up on the fact investigation on the law on that deals with preventing the jurors from learning about the prior robbery conviction. So we think it is, if you put those two documents side by side, we think it's clear that what was granted here is just about failure to conduct. Sotomayor. That would not be before us. Yes. That is true. And if you look at the cases that are cited in the COA order, those deal with fact investigation. I mean, these Anderson case and things like that. So I want to begin just with a few quick words on the first Strickland prong. I know there's been a lot said about this. To the extent that we credit the testimony of Adekai's retained counsel at the State evidentiary hearing about the scope of his pretrial investigation, I don't think anyone would say that he did a great job. But this is not a case, I mean, I don't want to, you know, go out of my way to defend everything that was done here, but this is not a case where trial counsel did not attempt to do anything, like, for instance, the Bryant case. I mean, here, trial counsel did take advantage of the DA's open-file policy, and there were six or so pretrial conferences, and he would go over and take notes from that file. This informed him of what the sort of the chief eyewitness the State was going to use had told prosecutors, and he used that to some effect in cross-examining her in the trial. And he also did hire an investigator to go out and conduct sort of further fact investigation. Now, we know from the record, at least he says in the record, that he never actually got that report. The report's not in the record, but because Adekai and his family did not pay for the investigative report. And, you know, there's no — this is a 2254D case, and there's no case directly on point about what a trial counsel's obligations are to do in a case where he's not being — whether he had an obligation to pay the investigator himself or what he was supposed to do right before that trial. I mean — Well, he was supposed to ask the court for money. They do that all the time. Well, I mean, one of the things here — we talk about this a bit in the brief. Under Texas state law, I mean, generally speaking, funds for investigative services are reserved to people who are working with counsel that was given to them by the state. Here, Adekai and his family agreed to pay $10,000 to hire this guy. So I don't think it's clear — I mean, this maybe gets more at prejudice. I don't think under Texas law, we can be certain that if he had requested — if he had done that and here — Adekai, if this is the record, had a job. He was making $10 an hour. He had his own apartment that he was paying the bills for. He might not have been able to show indigency sufficient to get the money to pay for this investigative report. Was the other — the driver of the car interviewed, or did that person testify at trial? It doesn't appear to. This comes up at the evidentiary hearing on the motion for a new trial. It's talked about, about the whereabouts of her, and it's mentioned at one point that she's bond forfeited. I took that — I mean, so I think that she — she was arrested, and they were going to charge her, and then she skipped town. So there's nothing in the record that says she was interviewed. Nothing. There's nothing really there on that. And the same with the other passenger in the car. So — so with all that being said, I mean, there's no need to delineate the precise contours of what trial counsel did or did not do or should have done better, because as every court that has examined this has concluded, Adekai has failed to satisfy Strickland's prejudice prong, and he fails to do so for two independent reasons. Even assuming that Adekai had a — I'm sorry. Adekai makes only conclusory allegations of what the more fulsome investigation he's calling for here might have uncovered. He does not present evidence that such an investigation would have made a meaningful difference in the outcome of his trial. It is not nearly enough to say what some witness may or may not have said. Adekai points to no case where a habeas Petitioner has been able to satisfy Strickland prejudice for an insufficient investigation claim based only on his own bare assertions. The standard that this Court has articulated — and this is in the Green case and the Gregory case, which dealt with insufficient investigations — is that a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. He must present competent summary judgment evidence. Now, what does that look like? It might vary based on the different arguments going on here, but we know from case law, and much of Adekai's claim rests on the failure to interview these other potential witnesses, that you have to name the witness, show that the witness would have testified, set out the content of the witness's proposed testimony, and show that that testimony would have been favorable. Adekai argues that he should be exempt from doing this because he counted on his trial counsel to conduct this investigation and he's in prison. But these cases, the Gregory case, for instance, is good on this. This is a pro se — this is a defendant proceeding pro se. There is no suggestion in the case law that the — that satisfying the Strickland prejudice prong is lessened to any degree in a failure to investigate case. Does it matter whether he had counsel during the habeas, the State habeas, to this analysis? I have not seen anything that suggests that that — that that matters. And here he did have — here he had counsel appointed almost immediately after trial and who raised this issue in the motion for new trial. There's nothing in the record to suggest why that counsel couldn't have conducted this investigation to the extent that he needed a lawyer's help in conducting the investigation. And that counsel — It is very — I mean, this is — we talk about a Seventh Circuit case in our brief that, you know, this Court hasn't addressed that argument head-on, but it certainly is held by implication that the fact that you didn't have counsel helping you in habeas does not lessen your — the need to satisfy Strickland prejudice. That's, again, the — the Gregory case, and I believe also the Green case. But the Seventh Circuit dealt with that argument, and they said, yes, it is hard to do this sort of stuff in prison, but you still must demonstrate with some precision the content of the testimony that potential witnesses would have given at trial, and you do that by presenting affidavits from these witnesses. And there's just been no attempt to do that here. And, again, I mean, this is a 2254d case. You're looking at this on the factual record that was before the State courts, and there's just — there's a lot of speculation as to what various people, some named, some unnamed, might have said, but nobody is coming forward like in Bryant to say that, hey, this guy was in California, not Texas, on the day of the crime, or, you know, a bunch of witnesses who saw an assault happen after the fact, like in Richards, that that is more likely to have caused the death of the person there. I mean, it is — this case is sort of starkly removed from the facts of Anderson and Richards and Bryant and the other — Sotomayor, did you agree that the indictment allegations vary — not that that's a separate point, but that the indictment allegations vary from the evidence which showed that the evidence was not that amazing? Well, I don't think that that's — that's not an issue here, and I think that that was resolved by the State court of appeals in looking at the — in analyzing Adekai's sufficiency of the evidence. Yeah, I don't mean that that's a separate point in and of itself, that the indictment variance gets him relief. I'm saying does that tend to support the notion that the prejudice analysis seems more robust? No, I don't think so. I mean, you have — in a lot of these other cases, they go out of their way to point out how weak the case was. Here, it's the exact opposite. The State court of appeals, looking at this, said that there was overwhelming evidence of his guilt and said that the State put on a strong case. I mean, that's — that's the thing. That's sort of the second issue here, is that — on prejudice, is that even assuming that Adekai had alleged with specificity what a better fact investigation would have uncovered, he still could not show that it would have been outcome determinative here, because this was — this is not a weak case. This — an eyewitness placed Adekai at the scene of the crime in an SUV with its license plates removed, backed into the spot with a — with a watchman and somebody casing the — the area by the salon, donning a mask and gloves and brandishing a gun. When the cops showed — started to come and you could hear the sirens, the car took off. Police chased the getaway car, watched Adekai flee, and then tracked him down. You had an officer testify to Adekai jumping from that car and then pursuing him on foot. You had an officer testify to recovering a mask, gloves, a gun loaded with gunpowder. You had an officer testify to finding Adekai hiding in a dump truck, claiming that he was asleep but breathing heavily and sweating as if he had just been running. And then you have the — the identification from the salon owner herself that — that, you know, this is — there was a woman, Adekai's girlfriend, in the driver's seat of the car. There are two men in the car, one of whom is described as a large man wearing a bright shirt who's bald, and then you have a skinny guy wearing all black who had dreadlocks. So this is — it's hard to see how this is a case of mistaken identity. The driver and Adekai are recovered, taken back immediately after they're apprehended, and she identifies Adekai as the man that she saw brandishing the gun just — just a few hours earlier. This — the standard this is talked about in — in, you know, Gregory and Green is that you cannot show Strickland prejudice for a failure-to-investigate claim when there is, quote, ample evidence supporting the conviction. Here, there was more than an ample basis for — for the State court determining — the State court and the Federal district court determining that whatever investigation maybe should have been conducted, that would — just would not have made a difference here. Any real possibility of Adekai being acquitted by a more thorough fact investigation was more than eclipsed by the remaining strong evidence of his guilt. If there are no questions, I yield back to the remainder of my time. Thank you. And we'll now hear the rebuttal on this record. A brief rebuttal. May it please the Court. Your Honors, I have two very brief points on rebuttal. I'd first like to address the scope of the Certificate of Appealability. Judge Dennis cited Bryant for the proposition that jurists of reason would debate whether counsel was ineffective in failing to conduct an adequate investigation. Bryant relies on Strickland, which clearly prescribes both a factual and legal investigation. The possibility that the Certificate of Appealability could have been more clear does not make it unclear that — that he was referring to a Strickland investigation. In any event, the failure to conduct a factual investigation must be viewed through the lens that Mr. Atticke was prejudiced by his trial counsel's incompetent disclosure to the jury of his prior conviction. And then second — my second point on the issue of prejudice, Your Honors, Mr. Atticke was prejudiced by this incompetent disclosure to the jury, and no one can test that. The question viewed through that lens really then becomes whether counsel's factual investigation was correct or not. And the answer to that is no, Your Honor. He failed to enforce the investigation and failed to obtain the investigator's report. He failed to interview any eyewitnesses to the alleged crime. And when viewing those circumstances as a whole, there is a reasonable probability that at least one juror would have struck a different balance. Thank you. Okay. Thank you. We appreciate both sides' arguments. It was a well-argued case. And we appreciate both sides' representation of their clients. Ms. Rucker, we want to thank you for taking the pro bono appointment and discharging your obligations very carefully and thoroughly, and we appreciate that very much. And of course, we appreciate your service as well, Mr. White. So with that, the case is under submission, and we will call up the hearing.